GEORGE H. MARTIN *et al.*

*v.*

ROBERT DUNCAN.

*Filed at Ottawa May 15, 1895.*

1. APPEALS AND ERRORS—*amount in controversy in attachment.* The value of the property claimed, and not the amount of the debt for which an attachment is levied, is the amount "in controversy" on an appeal from a judgment for the claimant on an interpleader in the attachment suit, and if such value exceeds $1000 such appeal lies to the Supreme Court.

2. LEVY—*of attachment on interest of mortgagor in chattels.* The interest of the mortgagor in mortgaged chattels is subject to attachment.

3. MORTGAGE—*of chattel—what constitutes.* A bill of sale of a stock of goods, with a contemporaneous agreement to re-sell upon payment of the expressed consideration of the sale, constitutes a chattel mortgage, within the provisions of law as to acknowledgment and recording.

4. SALE—*bill of—what necessary to denote change of possession under.* Substantial and visible signs of a change of title are necessary to constitute a change of possession of a stock of goods in a store on a bill of sale thereof to one who was already in possession as agent, in order to make it valid as to creditors, where the transfer was in the nature of a chattel mortgage, and was not recorded.

5. TRIAL—*instruction as to good faith of transfer between relatives.* An instruction that clearer and more convincing proof of the good faith of a transfer by an insolvent is necessary when made to a relative than when made to a stranger, should be given, when a transfer between relatives is attacked by creditors.

*Martin v. Duncan,* 47 Ill. App. 84, reversed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of LaSalle county; the Hon. GEORGE W. STIPP, Judge, presiding.

RECTOR C. HITT, A. T. LARDIN, and SMITH, HELMER & MOULTON, for plaintiffs in error:

The absence of a sufficient change of possession renders void the alleged conveyance of the goods in contro-

versy to appellee. *Lawson* v. *Funk*, 108 Ill. 502; *Flanagan* v. *Wood*, 33 Vt. 332.

A conveyance of goods and chattels, where the possession is permitted to remain with the vendor, is fraudulent *per se*, and void as to creditors and purchasers, and cannot be explained. *Thornton* v. *Davenport*, 1 Scam. 290; *Curran* v. *Bernard*, 6 Ill. App. 341; *Pickard* v. *Hopkins*, 17 id. 570; *Thompson* v. *Wilhite*, 81 Ill. 356.

If the acts done leave it apparently doubtful who owns the property, the law resolves the doubt against the party who should make the change open and visible to the world. *Flanagan* v. *Wood*, 33 Vt. 332.

The law requires an open, visible, permanent change of possession. *Meade* v. *Noyes*, 44 Conn. 487; *Hull* v. *Sigsworth*, id. 25.

Unless such visible change of possession accompanies the transfer or sale, the same is void *per se* as to creditors. *Gillette* v. *Stoddart*, 30 Ill. App. 231.

The change of possession must be actual and continued, so as to show the world at large that the property has changed hands. *Engles* v. *Marshall*, 19 Cal. 329.

The agreement of appellee to reconvey to the vendor in the alleged sale upon payment of the purchase price, etc., constitutes a secret trust that renders the sale void. *Stratton* v. *Putney*, 63 N. H. 577; *Watkins* v. *Arms*, 64 id. 99; *Jones* v. *King*, 86 Ill. 225.

SAMUEL RICHOLSON, and WILLIAM L. SEELEY, for defendant in error:

The party who claims the right to bring a suit to this court by appeal or writ of error, is bound to show, by the record, that he has such a right. *Lewis* v. *Shear*, 93 Ill. 121.

The party claiming the appeal must show that it is authorized by law. *McGuirk* v. *Burry*, 93 Ill. 118; *Morris* v. *Preston*, 93 id. 215.

The party appealing is the only one who can receive any benefit therefrom. *Rees* v. *Chicago*, 38 Ill. 322.

This court in *Farwell* v. *Becker*, 129 Ill. 269, said: "Where the amount against each defendant is separate and distinct, as is the case here, the two amounts cannot be united so as to confer jurisdiction."

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The plaintiffs in error, George H. Martin and Charles S. Dennis, partners under the firm name of G. H. Martin & Co., brought suit upon a claim of $322.50 against George W. Duncan, and, on May 28, 1891, levied a writ of attachment upon a stock of goods in a store in Ottawa as the property of George W. Duncan. The defendant in error, Robert Duncan, a brother of the debtor, interpleaded under section 29 of the Attachment act, (1 Starr & Cur. Stat. page 322), and claimed to be the owner of the goods. The evidence tends to show, that the goods in question were worth more than $2000.00. A trial was had in the circuit court before a jury upon the issue raised by the interpleader, which resulted in verdict and judgment for the claimant, the defendant in error herein. This judgment has been affirmed by the Appellate Court, and this writ of error is sued out for the purpose of reviewing the judgment of the latter court.

At the October term, A. D. 1894, a motion to dismiss the writ of error was made by the defendant in error and allowed. A subsequent motion was made to set aside the order dismissing the writ of error and re-instate the cause. The latter motion was reserved to the hearing for further consideration.

A majority of the judges of the Appellate Court have not given a certificate of importance.

It is claimed by defendant in error, that the amount of the claim, to-wit: $322.50, for which the plaintiffs in error levied the writ of attachment in the suit against George W. Duncan, is the amount involved in the controversy. On the other hand, it is claimed by the plaintiffs

in error, that the controversy here is not between the plaintiffs in the suit and their debtor, George W. Duncan, but between the plaintiffs and Robert Duncan, as to whether the property levied upon is owned by Robert Duncan or by George W. Duncan, and that, therefore, the amount involved is the value of the property, which is shown by the evidence to be more than $1000.00. We are inclined to think, that the plaintiffs in error are right in their contention in view of the decision of this court in *Cummins* v. *Holmes*, 107 Ill. 552. In the latter case, the plaintiffs, holders of a chattel mortgage given to secure about $500.00, replevied the mortgaged property from the sheriff, who had levied an execution upon it for $722.00 and costs in favor of certain creditors. In the trial court the issues were found for the plaintiffs, the mortgagees, and an appeal was taken to the Appellate Court by the sheriff in the interest of the creditors. This court held in that case, that its jurisdiction did not depend upon the amounts of the claims of the mortgagees and execution creditors, whether considered separately or in the aggregate, but upon the value of the property replevied, which exceeded the sum of $1000.00. We see no substantial difference between the case cited and the case at bar.

In the *Cummins* case, the property was levied upon by execution creditors, here it is levied upon by attaching creditors; there it was replevied by the mortgagee in a chattel mortgage, here it is claimed by a third party interpleading for the purpose of establishing his claim. Where any person, other than the defendant, claiming the attached property, interpleads under section 29 of the Attachment act, the court directs "a jury to be impaneled to inquire into the right of property." In such a proceeding, the issue being as to the ownership of the property attached, and not as to the indebtedness of the attachment debtor to the plaintiffs in the suit, it would seem that the amount involved would be the value of the

property attached, and not the amount of the claim sued upon.    As such value exceeds $1000.00 in the present case, we think that we have jurisdiction to entertain the writ of error.    The order dismissing the writ will, therefore, be set aside, and the cause is re-instated.

Coming to the merits of the case, we think that there was such error in the giving and refusal of instructions as requires a reversal of the judgment.    It will first be necessary to notice some of the facts, which the evidence tends to establish, and to which the instructions, as given and as refused, were intended to apply.

George W. Duncan, against whom the suit was brought, lived in Dixon, and had two stores, one in Dixon and one in Ottawa.    His brother, Robert Duncan, the defendant in error, lived in Ottawa and managed the store in the latter place from September, 1888, down to May 16, 1891, when the transfer hereinafter mentioned is alleged to have been made.    The defendant in error, in the management of the Ottawa store for his brother, George, sold goods, handled the money, made deposits, paid for goods, paid bills by checks, took out insurance, had no clerk, kept such books as were kept, and had an agreement that he was to receive for his services $25.00 per month and his board.    George Duncan came to Ottawa only occasionally, although the store was run in his name and advertised as his, and the stock levied upon is conceded to have been his until May 16, 1891.    Up to that date Robert Duncan was merely the agent and representative of his brother, George, and his possession was until then the possession of George.

On May 16, 1891, George executed to Robert a bill of sale, granting, bargaining and selling to the latter, for an expressed consideration of $2130.95, the stock of goods in the store at Ottawa.    At the same time, an agreement was executed by Robert Duncan, by which he agreed to re-sell the said stock of goods to George Duncan, upon the payment of $2130.95 within thirty days, together with

expenses and salary in the meantime; Robert keeping
account of goods bought and sold, monies collected and
expenses incurred, and accounting to George. The testi-
mony of defendant in error tends to show, that his brother,
George, owed him the amount named in the instrument
of transfer for money loaned and for unpaid salary.

In the first place, the bill of sale and the agreement
being executed at the same time constituted a chattel
mortgage. There was no absolute sale of the goods to
defendant in error, but only a conditional sale, such as is
ordinarily evidenced by a chattel mortgage, a pledge of
the goods for the security of a specified amount to be
paid within a specified time. In its instructions to the
jury the trial court treated the instrument executed by
George Duncan to defendant in error as an absolute bill
of sale, and told them that, if they believed from the evi-
dence that there was a *bona fide* purchase and delivery of
the goods by George to Robert, the latter would have a
good and valid title to them as against any subsequent
attachment, lien or claim. We are inclined to regard the
instructions as erroneous in this respect. The interest
of a mortgagor in mortgaged chattels may be attached
or levied upon subject to the mortgage. (*Durfee* v. *Grin-
nell*, 69 Ill. 371; *Gaar, Scott & Co.* v. *Hurd*, 92 id. 315). Here,
the writ of attachment was levied on May 28, 1891, before
the lapse of the thirty days limited for the payment of the
debt secured, and before condition broken, so that the
title of the mortgagee was as yet only a defeasible one.
In the instructions given, the court treated the bill of
sale as a separate and independent instrument entirely
apart from its connection with the agreement, and, in
refusing some of the instructions asked by plaintiffs in
error, declined to present to the jury any consideration
of the two instruments as related to each other.

Treating the bill of sale as an absolute transfer, one
of the instructions told the jury that it is not necessary
to acknowledge and record a bill of sale. This is true,

but it was a misleading statement under the facts of this case. · If we are correct in regarding the bill of sale and agreement, considered together, as a mortgage security, then it 'is not true that acknowledgment and recording were unnecessary. Where the possession of goods covered by a chattel mortgage remains with the mortgagor, want of acknowledgment and failure to record make the mortgage void as to attaching creditors. It is otherwise, where the mortgagee takes possession of the mortgaged property before levy or attachment by other creditors. It was, therefore, important in this case, as sustaining the validity of the transfer to defendant in error, to show that he was in possession when the property was attached; that there had been a change of possession. Up to May 16 defendant in error had been in possession as agent of his brother, and if, on May 28, he was in possession for himself, the change in the character of the possession should have been indicated by such outward, open, actual and visible signs, as could be seen and known to the public, or persons dealing with the goods. (*Claflin* v. *Rosenberg*, 42 Mo. 439). Instructions to this effect asked for the plaintiffs below were refused. When the known and previously recognized agent of an alleged vendor remains in possession, the appearance to the world is the same as though the vendor himself remained in possession, unless there are substantial and visible signs of a change of title. (*Flanagan* v. *Wood*, 33 Vt. 332).

The court below was also asked in behalf of plaintiffs to instruct the jury, that while it is not unlawful for brothers to deal with each other, yet where the parties to a transfer are near relatives, clearer and more convincing proof is required of the good faith of the transaction than when they are strangers. We can see no good reason why this instruction should not have been given. The fact of relationship is a circumstance to excite suspicion, though not in itself proof of fraud. (*Wightman* v. *Hart*, 37 Ill. 123 ; *Robinson Bank* v. *Miller*, 153

id. 244).   In case of a conveyance by an insolvent debtor, if a near relationship exists between the grantor and grantee, "more vigilant and jealous scrutiny will be excited, and clearer and more convincing proof required, than when the transaction is between strangers." (*Lehman, Durr & Co.* v. *Greenhut,* 88 Ala. 478).

For the reasons stated, the judgments of the Appellate and circuit courts are reversed, and the cause is remanded to·the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*